Todd A. Walburg (SBN 213063)
Bailey & Glasser LLP
1999 Harrison Street
Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000
Facsimile: (510) 463-0291
twalburg@baileyglasser.com

Timothy Granitz (*pro hac vice* to be submitted)
MAHANY LAW
8112 W. Bluemound Road, Suite 101
Milwaukee, WI 53213
Telephone: (414) 258-2375
tgranitz@mahanylaw.com
(additional counsel listed on signature page)

*Counsel for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| CLYDE W. TYNES, JR., *on behalf of himself and all others similarly situated*,<br><br>     Plaintiff,<br><br>        v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,<br><br>     Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**ACTION FOR BREACH OF CONTRACT; FEDERAL FAIR DEBT COLLECTION PRACTICES ACT; ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE §§ 1788 ET SEQ.; UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.** |

Plaintiff Clyde W. Tynes, Jr. ("Plaintiff"), on behalf of himself and all others similarly situated, alleges breach of contract, violations of the Fair Debt Collection Practices Act, violations of the Rosenthal Fair Debt Collection Practices Act, and violations of the Unfair

Competition Law against Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Defendant" or "Mr. Cooper"). In support of these claims, Plaintiff states as follows:

## NATURE OF THE ACTION

1.     Following the worldwide outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") to, among other things, provide relief to millions of American homeowners struggling to make their mortgage payments as a result of the economic difficulties caused by the pandemic.

2.     On March 27, 2020, the CARES Act was signed into law. *See* Pub. L. No. 116–136, 134 Stat. 281 (2020). Section 4022 of the CARES Act affords homeowners with federally backed loans who have experienced economic hardship as a result of COVID-19 the right to request a forbearance on their home loans.

3.     Upon a request by a borrower, "forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days at the request of the borrower." *Id.* at 490.

4.     Under the U.S. Department of Housing and Urban Development ("HUD") policy changes outlined in Mortgagee Letter 2021-05 ("Mortgagee Letter"), servicers must review all borrowers who were on a COVID-19 Forbearance or other forbearance related to the COVID-19 pandemic, for COVID-19 Loss Mitigation Home Retention Options after the completion or expiration of the borrower's forbearance period. This must be completed no later than 120 days from the earlier of the date of completion or expiration of the forbearance.

5.     The Mortgagee must also review all borrowers who did not receive a COVID-19 Forbearance or other forbearance related to the COVID-19 pandemic for COVID-19 Loss Mitigation Home Retention and Home Disposition Options when the borrower is 90 or more

Days Delinquent and the borrower affirms they have been negatively impacted by COVID-19. Mortgagee Letter at 6-7.

6.     The COVID-19 Home Retention Options include the COVID-19 Standalone Partial Claim, the COVID-19 Owner-Occupant Loan Modification, the COVID-19 Combination Partial Claim and Loan Modification, and the COVID-19 FHA-HAMP Combination Loan Modification and Partial Claim with Reduced Documentation. Eligible borrowers may be granted more than one option. *Id.* at 6.

7.     Under the HUD policy changes, once a borrower is evaluated and granted any of the COVID-19 Home Retention Options, the servicer must ensure, among other terms, that "all Late Charges, fees, and penalties are waived except that [servicers] are not required to waive Late Charges, fees, and penalties, if any, accumulated prior to March 1, 2020." *Id.* at 8, 9, 11, 13, 15.

8.     These provisions require the Mortgagee to waive all fees incurred at any time during the "covered period" for borrowers approved for one of the Home Retention Options.

9.     The "covered period" is defined in the CARES Act and is the period beginning on March 27, 2020, and ending on the sooner of December 31, 2020, or the termination of the national emergency resulting from the COVID-19 outbreak declared by the president under the National Emergencies Act. § 4023(f)(5).

10.     Defendant Mr. Cooper services residential and commercial mortgages in the United States, including in California.

11.     Following Congress's enactment of the CARES Act, Defendant negligently, knowingly, or willfully sent misleading statements to Plaintiff and the proposed class members, indicating, *inter alia*, that they could be subject to foreclosure if they failed to cure

the delinquencies and late fees that accrued during the covered period or during their CARES Act forbearance plans by making a lump sum payment on their regular due dates—in contravention to the terms of their forbearances and relevant laws and regulations. In doing so, Defendant misled its borrowers regarding their rights under the CARES Act forbearance programs, breaching their contracts and violating the Fair Debt Collection Practices Act, the Rosenthal Fair Debt Collection Practices Act, and the Unfair Competition Law.

12.     Plaintiff paid these illegal fees and brings this class action lawsuit individually and on behalf of all similarly situated members of the proposed classes to recover the unlawfully charged fees and to enjoin Defendant from continuing to charge these unlawful fees and improperly service these accounts.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Defendant because Defendant conducts debt collection activities in California and performed the wrongful acts giving rise to this lawsuit in California, as described in this Complaint.

14.     Venue is proper in this District because the causes of action asserted herein arose in this District.

15.     Subject matter jurisdiction exists under the Class Action Fairness Act because diversity exists between the Defendant and at least one class member and the amount in controversy exceeds $5,000,000.

## PARTIES

16.     Plaintiff Clyde W. Tynes, Jr. is a natural person residing in Redding, California who has a mortgage loan serviced by Defendant.

17.    Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper is a Delaware limited liability company with its principal place of business located in Dallas, TX.

## APPLICABLE LAW

## FAIR DEBT COLLECTION PRACTICES ACT

18.    The purpose of the Fair Debt Collection Practices Act ("FDCPA") is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

19.    The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

20.    The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

21.    Under the FDCPA, a "consumer" is "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

22.    A "debt collector" is "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(2).

23.    The FDCPA defines "communication" as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

24.    The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

**ROSENTHAL ACT**

25.   The Rosenthal Fair Debt Collection Practice Act ("Rosenthal Act") is a "remedial statute [that] should be interpreted broadly in order to effectuate its purpose." *See People ex rel. Lungren v. Superior Court*, 926 P.2d 1042, 1055 (Cal. 1996) ("[C]ivil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose."); *Komarova v. National Credit Acceptance, Inc.*, 95 Cal. Rptr. 3d 880, 892 (Cal. Ct. App. 2009); Cal. Civ. Code § 1788.

26.   The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code §1788.2(c).

27.   The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code §1788.2(f).

28.   The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code §1788.2(e).

29.   The Rosenthal Act prohibits "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b).

30.   The Rosenthal Act makes it illegal for any entity covered by it to violate the federal FDCPA. Cal. Civ. Code § 1788.17.

**UNFAIR COMPETITION LAW**

31.    The Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

32.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

33.    In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

**FACTUAL ALLEGATIONS**

*The Mortgage Servicing Industry*

34.    Mortgage lenders rarely service their own loans. In many cases, lenders specialize in the origination of loans, but they are not equipped to handle the day-to-day administrative tasks that come with a mortgage. Instead of managing these duties in-house, they assign the servicing rights of their loans to a designated servicer—a company that specializes in the day-to-day management and administration of mortgages.

35.    A mortgage servicer is a company that, in turn, handles the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements, and managing escrow accounts.

36.    Mr. Cooper is a loan servicer that operates nationwide.

*Named Plaintiff's Facts*

37.    On or around July 31, 2019, Plaintiff Clyde W. Tynes, Jr., purchased a home in Redding, California, through an FHA loan from Commerce Home Mortgage LLC, secured by a mortgage on the property (the "Deed of Trust"). The Deed of Trust is attached as **Exhibit**

**A**. Plaintiff took out the mortgage loan secured by his property for personal, family, or household uses.

38.    On or around October 1, 2019, Defendant was assigned the servicing rights to the loan. As servicer, Defendant has the right to collect payments and perform services for the borrower on behalf of the lender. The Deed of Trust provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 19. The Deed of Trust further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender." Ex. A ¶ 12.[1] Defendant thus became bound as an assignee to the Deed of Trust at the time it acquired the servicing rights.

39.    Like other borrowers whose mortgages are serviced by Defendant, the Deed of Trust incorporates standard language from Fannie Mae uniform model mortgages. And like other Fannie Mae or FHA mortgages, the Deed of Trust states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." Ex. A ¶ 13.

---

[1] Section (or Paragraph) 19 provides: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change . . .. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." Ex. A ¶ 19.

40.     "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2, ¶ (J).

41.     The Deed of Trust further states that it is "governed by federal law and the law of the jurisdiction in which the Property is located," *i.e.*, California. Ex. A ¶ 15.

42.     Defendant is a "debt collector" within the meaning of the FDCPA and the Rosenthal Act.

43.     During the covered period following enactment of the CARES Act, Plaintiff attempted in good faith to make the monthly payments on his loan but struggled to keep up with the payment schedule.

44.     As a result, Plaintiff incurred late fees in June 2020, July 2020, and September 2020.

45.     On or around October 16, 2020, Plaintiff attempted to make a payment on his loan, but this payment was reversed and Defendant charged Plaintiff an insufficient funds fee ("NSF fee") in the amount of $15.00.

46.     On or around November 18, 2020, Defendant identified Plaintiff's account as delinquent and unilaterally enrolled Plaintiff in Defendant's so-called Pandemic Forbearance Plan (the "Forbearance Plan"), akin to a CARES Act Forbearance Plan. **Exhibit B**; CARES Act, Pub. L. 116–136, 134 Stat. 281 (2020).

47.     However, Defendant did not review the account for late charges and fees assessed during the entire covered period beginning on or around March 27, 2020, and did not waive these fees or credit Plaintiff's account for these charges once Plaintiff was enrolled in the Forbearance plan.

48.     Only after Defendant enrolled Plaintiff in the Forbearance Plan did Defendant begin to waive subsequent late fees on Plaintiff's account, beginning on or around November 2020.

49.     On or around May 8, 2021, Defendant notified Plaintiff that the Forbearance Plan had been removed from Plaintiff's account at his request.

50.     Despite his loan being under a CARES Act approved Forbearance Plan, Defendant sent Plaintiff misleading statements and other misrepresentations that led him to reasonably believe that his loan was not in active forbearance, that late charges were due for not paying the monthly balance, and that he owed a lump sum amounting to several times his normal mortgage payment.

51.     Plaintiff paid these late fees in full for each month they were assessed.

52.     On or around March 18, 2021, Defendant sent Plaintiff a notice with his monthly mortgage statement (the "March 18 Notice") stating that his account was 169 days delinquent, and his mortgage payment was past due for October 1, 2020 and succeeding monthly payments.

53.     The March 18 Notice demanded payment of $9,421.53, which Defendant stated had to be paid by April 1, 2021 to bring the loan current.

54.     The March 18 Notice also included an NSF fee in the amount of $15, presumably dating back to the October 2020 NSF fee Defendant previously assessed.

55.     Defendant's misleading representations throughout Plaintiff's Forbearance Plan specified an "Amount Due" for each of the periodic payments that Plaintiff was not in fact obligated to pay. In the March 18 Notice, Defendant misrepresented that Plaintiff had

"Unpaid balances" equal to the monthly payments that he forwent pursuant to the Forbearance Plan.

56.     While the March 18 Notice advised Plaintiff that his "Pandemic Forbearance Plan payment is $0.00," this statement was immediately followed by a "Recent Account History" section listing the misrepresented "Unpaid balances" from each month Plaintiff was in forbearance. In fact, this misleading representation was included in all notices accompanying Plaintiff's mortgage statements during the forbearance period. Nowhere in communications to Plaintiff did Defendant explain that no payment was due for the "Unpaid balances."

57.     Absent from the March 18 Notice was any offer from Defendant to Plaintiff to enter into any of the HUD/FHA-approved COVID-19 Home Retention Options that were available to Plaintiff as an FHA borrower.

58.     Absent from Defendant's May 8, 2021 letter confirming removal of the Forbearance Plan from Plaintiff's account was any offer from Defendant to Plaintiff to enter into any of the HUD/FHA-approved COVID-19 Home Retention Options for which Defendant should have evaluated Plaintiff's eligibility as an FHA borrower.

59.     At all relevant times, Plaintiff's mortgage debt was demanded by Defendant as due or owing.

60.     Absent from the mortgage statements, representations, or communications from Defendant were repayment options for Plaintiff to exit the Forbearance Plan, such as those required by the CARES Act and related law—i.e., an option to defer the payment to the end of the loan, lengthen the loan term, defer payment until the sale or refinancing of the

home, or enter any of the federally approved COVID-19 Home Retention Options available to FHA borrowers.

61.    Had Defendant offered Plaintiff any of the federally approved COVID-19 Home Retention Options, Defendant would have been required to waive all late charges, fees, or penalties assessed from March 13, 2020, including the amounts assessed against Plaintiff prior to Defendant's enrollment of Plaintiff in the Forbearance Plan.

62.    Due to fears he would lose his home or face additional fees, Plaintiff paid off the lump sum of $9,421.53 demanded in the March 18 Notice, late charges assessed earlier in the amount of $115.17, and NSF fees totaling $15.00.

## CLASS ACTION ALLEGATIONS

63.    Plaintiff brings this action on behalf of the following classes of persons, subject to modification after discovery and case development:

Forbearance Option Classes

Nationwide Class:

All persons (1) with a residential mortgage loan securing a property in the United States, (2) serviced or subserviced by Nationstar Mortgage LLC d/b/a Mr. Cooper, (3) and who were subject to forbearance under the CARES Act and who, upon exiting such forbearance period, were not provided all options for repayment by Defendant as required under the CARES Act and related law.

California Subclass:

All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by Nationstar Mortgage LLC d/b/a Mr. Cooper, (3) and who were subject to forbearance under the CARES Act and who, upon exiting such forbearance period, were not provided all other options for repayment by Defendant as required under the CARES Act and related law.

Improper Fee Classes

Nationwide Class:

All persons (1) with a residential mortgage loan securing a property in the United States, (2) serviced or subserviced by Nationstar Mortgage LLC d/b/a Mr. Cooper, (3) and who were subject to forbearance under the CARES Act and to whom, during such forbearance period, Defendant sent misleading representations regarding the amounts or timing of payments due.

California Subclass:

All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by Nationstar Mortgage LLC d/b/a Mr. Cooper, (3) and who were subject to forbearance under the CARES Act and to whom, during such forbearance period, Defendant sent misleading representations regarding the amounts or timing of payments due.

64.     Class members are identifiable through Defendant's records and payment databases.

65.     Excluded from the class are Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

66.     Plaintiff proposes that he serve as class representative.

67.     Plaintiff and the members of the classes have all been harmed by the actions of Defendant.

68.     Plaintiff reserves the right to amend the definitions of the classes if discovery or further investigation reveals that the classes or any of them should be expanded or otherwise modified.

69.     Numerosity is satisfied. There are thousands of members of each proposed class. Individual joinder of these persons is impracticable.

70.     There are questions of law and fact common to Plaintiff and to the members of the classes, including, but not limited to:

a.      Whether Defendant breached its contracts with borrowers by charging fees violating the CARES Act;

b.      Whether Defendant violated the FDCPA;

c.      Whether Defendant violated the Rosenthal Act by charging fees not due;

d.      Whether Defendant violated the UCL;

e.      Whether Defendant's business practices are unfair;

f.      Whether Defendant's business practices are unlawful;

g.      Whether Defendant serviced residential mortgages that were in forbearance;

h.      Whether Defendant threatened foreclosure of delinquent loans that were not made current via lump sum and/or made other misstatements to residential mortgage borrowers whose loans were or should have been in forbearance under the CARES Act;

i.      Whether Defendant evaluated Plaintiff and class members' eligibility for alternative repayment plans when Plaintiff and class members exited forbearance;

j.      Whether Defendant offered repayment plans when Plaintiff and class members exited forbearance;

k.      Whether Plaintiff and the members of the classes were damaged by Defendant's conduct;

l.      Whether Plaintiff and the members of the classes are entitled to actual and/or statutory damages as a result of Defendant's actions;

m.      Whether Plaintiff and the members of the classes are entitled to restitution;

n.      Whether Plaintiff and the members of the classes are entitled to injunctive relief;

o.      Whether Plaintiff and the members of the classes are entitled to attorney's fees and costs.

71.    Plaintiff's claims are typical of the claims of the members of the classes . Plaintiff and the members of the classes entered into uniform covenants in their Deeds of Trust that prohibit illegal fees. Plaintiff and the class members all had a mortgage serviced by Defendant that was or should have been in forbearance under the CARES Act guidelines and to whom Defendant nevertheless sent misleading and misleadingly incomplete representations, including threatened foreclosure without offering or informing Plaintiff and members of the classes repayment plans required by law and charging late fees for payments not due during the forbearance period.

72.    Plaintiff is an adequate class representative because his interests do not conflict with but instead align with the interests of the members of the classes, and he will adequately and fairly protect the interests of the class members. Plaintiff has taken actions before filing this complaint, by hiring skilled counsel experienced in mortgage-related, consumer and other class actions and Plaintiff intends protect the interests of the proposed classes throughout this litigation.

73.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

74.    The likelihood that individual members of the proposed classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I**
**Breach of Contract**
**(Nationwide Class and Individual Claim)**

75.     Plaintiff incorporates the preceding paragraphs by reference.

76.     This Count is alleged on behalf of Plaintiff individually and on behalf of the members of each of the proposed classes.

77.     Plaintiff and the members of each class became parties to contracts with Defendant when Defendant became the loan servicer. Defendant breached its contracts with Plaintiff and the members of each class when Defendant charged late fees specifically prohibited in their Deeds of Trust.

78.     Plaintiff purchased a home subject to the Deed of Trust. *See* Ex. A.

79.     On or around October 1, 2019, Defendant was assigned the servicing rights to the loan. As servicer, Defendant has the right to collect payments and perform services for the borrower on behalf of the lender. The Deed of Trust provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 19. The Deed of Trust further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender." Ex. A ¶ 12. Defendant thus became bound as an assignee to the Deed of Trust at the time it acquired the servicing rights.

80.     Like other borrowers whose mortgages are serviced by Defendant, the Deed of Trust incorporates standard language from Fannie Mae uniform model mortgages, which are used frequently for FHA loans. And like other Fannie Mae or FHA mortgages, the Deed of Trust states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 13.

81.   "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2, ¶ (J).

82.   The Deed of Trust further states that it is "governed by federal law and the law of the jurisdiction in which the Property is located," *i.e.*, California. Ex. A ¶ 15.

83.   Defendant enrolled Plaintiff in a CARES Act approved Forbearance Plan in November 2020, covering Plaintiff's payments owed beginning in October 2020.

84.   Despite Plaintiff entering a forbearance period, on March 18, 2021, Defendant sent Plaintiff a notice ("March 18 Notice") stating that his account was due for the October 1, 2020 payment and succeeding payments.

85.   In the March 18 Notice, Defendant demanded a lump sum payment of $9,421.53, as well as $15.00 in NSF fees, by April 1, 2021, to bring the loan current.

86.   While the March 18 Notice advised Plaintiff that his "Pandemic Forbearance Plan payment is $0.00," this statement was immediately followed by a list of "Unpaid balances" from each month Plaintiff was in forbearance and Defendant's demand for payment. In fact, this materially misleading and incomplete representation was included in all notices accompanying Plaintiff's mortgage statements during the forbearance period. Nowhere in communications to Plaintiff did Defendant explain that no payment was due on the "Unpaid balances."

87.   Absent from the March 18 Notice was any notice from Defendant disclosing Plaintiff's eligibility for any of the federally approved COVID-19 Home Retention Options.

88.   Absent from Defendant's subsequent May 8, 2020 letter confirming removal of the Forbearance Plan from Plaintiff's account was any offer from Defendant to Plaintiff to

enter into any of the federally approved COVID-19 Home Retention Options for which Defendant should have evaluated Plaintiff's eligibility as an FHA borrower.

89.     Defendant also assessed late charges against Plaintiff totaling $115.17 for the months of June 2020, July 2020, and September 2020, rather than enrolling Plaintiff in the Forbearance Plan or offering Plaintiff repayment options. Plaintiff paid these charges in full.

90.     Only after Defendant enrolled Plaintiff in the Forbearance Plan in November 2020 did Defendant begin to waive late fees, and Defendant did not waive fees previously charged during the CARES Act protection time period.

91.     By assessing late charges for not paying the monthly mortgage balance, failing to assess eligibility for and offer alternative repayment plans, and demanding a lump sum payment during the forbearance period, Defendant violated the CARES Act and breached Plaintiff's and other similarly situated class members' uniform Deeds of Trust.

92.     By charging late fees, failing to assess eligibility for and offer alternative repayment plans, and demanding immediate payment of lump sums in violation of federal law, i.e., the CARES Act, Defendant similarly breached the uniform covenants of the Deed of Trust.

93.     Because the above provisions are contained in the "Uniform Covenants" section of the Deed of Trust that apply to all government backed mortgage loans, Defendant has breached its contracts as to each member of the proposed classes.

94.     Plaintiff and the members of each class were damaged by Defendant's breaches.

## COUNT II
### Violations of the Fair Debt Collection Practices Act
### (Nationwide Class and Individual Claim)

95.     Plaintiff incorporates the preceding paragraphs by reference.

96.   This Count is alleged by Plaintiff individually and on behalf of the members of each of the proposed classes.

97.   Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he purchased a home in California by mortgage primarily for personal, family, or household use.

98.   Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because as a servicer it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another.

99.   The FDCPA prohibits debt collectors from misrepresenting "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(a).

100.   Defendant sent misleading statements and representations to Plaintiff and the members of each proposed class which misrepresented the legal status of their loans by indicating or implying that the loans were delinquent and that there were other adverse consequences, including late fees, due to the borrowers' failure to make periodic payments during the covered COVID forbearance period, as alleged more fully above.

101.   Absent from the mortgage statements, representations, or communications from Defendant were repayment options for Plaintiff and class members to exit the forbearance plan, such as those required by the CARES Act and related law—i.e., an option to defer the payment to the end of the loan, lengthen the loan term, or defer payment until the sale or refinancing of the home.

102.   Further, the misleading statements that Defendant sent to Plaintiff and the class members misrepresented the "Amount Due" of their periodic mortgage payments in contradiction with the CARES Act, as alleged more fully above.

103.   In so doing, Defendant violated 15 U.S.C. § 1692e(2)(a).

104.   Further, the FDCPA prohibits debt collectors from threatening to "take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

105.   Under the CARES Act, mortgage servicers are required to offer borrowers loss mitigation plans in lieu of foreclosure upon the expiration of their forbearance plan and are not permitted to demand all forbearance payments at the end of a forbearance agreement.[2]

106.   Further, under Sections 4022(b)(3) and (c)(1) of the CARES Act, a mortgage servicer is prohibited from charging any "fees, penalties, or interest" during the span of a borrower's forbearance.

107.   Despite the foregoing, Defendant charged late fees for monthly payments and NSF fees during this time period.

108.   Defendant also sent to Plaintiff and class members statements and other representations in which Defendant falsely stated that borrowers must pay lump sums equal to the amount of their monthly payments subject to forbearance to bring their loans current.

109.   Defendant did not have the legal right to demand for Plaintiff and the class members to pay the full amount of their delinquency; nor did it have the legal right to charge them "late fees" or proceed to "foreclosure" if Plaintiff and other similarly situated borrowers failed to pay such amount.

110.   In so doing, Defendant violated 15 U.S.C. § 1692e(5).

---

[2] Consumer Financial Protection Bureau, *Mortgage and Housing Assistance – Exit Your Forbearance*, https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/help-for-homeowners/repay-forbearance/ (last accessed October 8, 2021).

111. Further, the FDCPA prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

112. By engaging in the above-mentioned conduct, Defendant made false representations and employed deceptive means to collect the mortgage obligations of Plaintiff and similarly situated class members during their forbearance plans.

113. In so doing, Defendant violated 15 U.S.C. § 1692e(10).

114. As a result of each violation of the FDCPA, Plaintiff and the class members are entitled to recover actual damages under 15 U.S.C. § 1692k(a)(1); statutory damages under 15 U.S.C. § 1692k(a)(2)(A) to the full extent provided by law; and reasonable attorneys' fees and costs under 15 U.S.C. § 1692l(a)(3) from Defendant.

## COUNT III
**Violation of the Rosenthal Fair Debt Collection Practices Act
Cal. Civ. Code §§ 1788 *et seq.* (Rosenthal Act)
(California Sub-Class and Individual Claim)**

115. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

116. This Count is alleged by Plaintiff individually and on behalf of the members of the California subclasses.

117. The Rosenthal Act applies to Defendant because it regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

118. Plaintiff's mortgage loan is consumer debt under the Rosenthal Act. Cal. Civ. Code § 1788.2(e), (f).

119. At all relevant times, the loan was due or owing at the time in that there were alleged past due payments. *Id.*

120.  The Rosenthal Act makes it illegal for any entity covered by it to engage in conduct prohibited by the FDCPA. Cal. Civ. Code § 1788.17. By engaging in conduct prohibited by the FDCPA as set forth above, Defendant violated the Rosenthal Act.

121.  The Rosenthal Act prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

122.  When Defendant collected late fees and/or NSF fees assessed to Plaintiff and the members of the California subclasses during the period prior to enrollment in a forbearance plan or when an FHA-approved alternative should have been offered, it collected (or attempted to collect) fees or charges for services rendered that were not permitted by law under the CARES Act. This conduct violated the Rosenthal Act.

123.  Plaintiff and the members of the California subclasses were harmed when Defendant violated the Rosenthal Act through the above-described conduct.

124.  As a result of each violation of the Rosenthal Act, Plaintiff and the members of the California subclasses are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation, pursuant to Cal. Civ. Code §§ 1788.30(b), 1788.17, and 1788.32, to the full extent provided by law; and reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c).

<u>**COUNT IV**</u>
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(California Sub-Class and Individual Claim)**

125.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.

126.   This Count is alleged by Plaintiff individually and on behalf of the members of the California subclasses.

127.   The California Unfair Competition Law "UCL" defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

**Unlawful Acts**

128.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

129.   Defendant's conduct violates the Rosenthal Act, the FDCPA, and the CARES Act as discussed above. These violations are sufficient to support the claims of Plaintiff and the members of the California subclasses lass under the unlawful prong of the UCL.

**Unfair Acts**

130.   In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

131.   Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in the immoral, unethical, oppressive, and unscrupulous practice of charging late fees not authorized by the Uniform Covenants of Fannie Mae model mortgage loans or applicable law. Defendant's unfair practices were substantially injurious to consumers, who were forced to pay large late fees or lump sums of aggregate monthly payments when their mortgage loans were in forbearance or should have been in forbearance, violating the CARES Act.

132.  As a result of the above conduct, Plaintiff has suffered economic injury, and Defendant has been unjustly enriched at the expense of Plaintiff and the members of the California subclasses. Defendant has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

133.  Through its unlawful acts and practices, Defendant has improperly obtained money from Plaintiff and the members of the California subclasses. As such, Plaintiff requests that the Court cause Defendant to restore the money to Plaintiff and the members of the California subclasses and enjoin Defendant from continuing to violate the UCL. Plaintiff's mortgage continues to be serviced by Defendant. Absent an injunction, Plaintiff and the class members may be irreparably harmed and/or denied an effective and complete remedy.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and others similarly situated, respectfully requests that the Court:

a.    Certify the proposed classes;

b.    Appoint Plaintiff's counsel as Class Counsel for the classes;

c.    Award damages to Plaintiff and the classes in an amount to be determined at trial;

d.    Award statutory damages and/or penalties to Plaintiff and the classes as authorized by law;

e.    Permanently enjoin Defendant from the wrongful and unlawful conduct alleged herein;

f.      Award Plaintiff and the classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

g.      Award pre- and post-judgment interest to the extent provided by law; and

h.      Award such further relief as the Court deems appropriate.

### PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE

Dated this 2nd day of December, 2021.

Respectfully Submitted,

*/s/ Todd A. Walburg*
Todd. A. Walburg (SBN 213063)
BAILEY & GLASSER LLP
1999 Harrison Street
Suite 660
Oakland, CA 94612
Telephone: (510) 272-8000
Facsimile: (510) 463-0291
twalburg@baileyglasser.com

James L. Kauffman
(*pro hac vice* to be submitted)
Lawrence J. Lederer
(*pro hac vice* to be submitted)
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street NW - Suite 540
Washington, DC  20007
Telephone: (202) 463-2101
Facsimile:  (202) 463-2103
jkauffman@baileyglasser.com
llederer@baileyglasser.com

Timothy Granitz
(*pro hac vice* to be submitted)
MAHANY LAW
8112 W Bluemound Road, Suite 101
Milwaukee, WI 53213
Telephone: (414) 258-2375
tgranitz@mahanylaw.com

*Counsel for Plaintiff and the Proposed Classes*